Hay, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is the case of a lieutenant commander in the Navy who was ordered by the Secretary of the Navy to report to the commander in chief of the United States Pacific Fleet for duty on his personal staff as fleet ordnance officer. He now claims that in addition to the regular pay of his rank he is entitled to receive $200 per annum as aid by virtue of the act of May 13, 1908, 35 Stat. L., 128. In other words, he claims that by virtue of his appointment as fleet ordnance officer he became an aid of the commander in chief of the United States Pacific Fleet and is entitled to the additional pay of an aid.
The plaintiff also claims pay as an aid to the rear admiral commanding Mare Island Navy Yard.
During the whole time for which he claims pay as aid he was a lieutenant commander in the Navy.
There is no statute authorizing the appointment of aids to admirals, vice admirals, and rear admirals of the Navy. All of the statute law on the subject of aids pertains to the appointment of aids to major and brigadier generals of the Army. Revised Statutes, section 1098, fixes the rank and number of aids to major and brigadier generals of the Army. Revised Statutes, section 1261, fixes the pay of aids to major and brigadier generals of the Army. The act of March 3, 1899, 30 Stat. L., 1007, does not mention the pay of aids in the Navy, but prescribes that the pay of line officers of the Navy shall be the same as that of line officers of the Army. *26 Under the last-mentioned statute the pay of an aid in the Navy was decided to be the same as that of an aid in the Army. United States v. Miller, 208 U. S., 32.
The said act of May 13, 1908, supra, fixes the pay of aids in the Navy, but does no more.
There is nowhere in the statutes, nor in the regulations of the War or Navy Departments, any definition of what an aid is within the meaning of said act of May 13,1908. Nor are the duties of an aid, in the meaning of the law, set out in either the statutes or regulations of the departments. Nor in any decision of this court or of the Supreme Court of the United States is it decided what an aid to admirals, vice admirals, and rear admirals in the Navy is, within the meaning of the statute fixing the pay of aids.
Both this court and the Supreme Court of the United States have passed upon individual cases dealing with the question of pay to the aids in the Navy, but in none of these cases has any general rule been laid down to guide this court in the determination of the question involved in this case and the other cases submitted with it. Therefore the court must determine what is an aid within the meaning of said act of May 13,1908.
For many years aids of general officers of the Army have been recognized, and their pay, number, and rank have been fixed by law. The appointment of aids to admirals, vice admirals, and rear admirals of the Navy was suggested by this practice in the Army, and up to the time of the passage of the act fixing the pay of aids in the Navy their pay, as well as their rank, was determined by the law of the Army. United States v. Crosley, 196 U. S., 327. It is therefore proper to infer that the duties of aids in the Navy were the same as those of aids in the Army, and if the duties of Army aids are well understood it will not be difficult to ascertain the duties of aids in the Navy.
Farrow’s Military Encyclopedia defines an aid to be “an officer who may be regarded as a kind of superior confidential attendant upon a general in active service. The aide-decamp is the organ of the general. An aide-de-camp also acts as secretary to the general, and assists him in his corre *27 spondence when lie is not specifically military secretary. He aids likewise in dispensing the courtesies of the general’s house or tent.”
The Standard Dictionary defines an aid to be “ an officer who receives and transmits the orders of a general and performs for him other confidential service.”
The Encyclopedia Britannica defines him to be “ an officer of the personal staff of a general, who acts as his confidential secretary in routine matters.”
Bear Admiral Osterhaus in his testimony in this case, in describing the duties of the plaintiff whom he had detailed as his aid, says “ he was strictly my personal aid, and performed many personal acts which I would not feel called upon to request of any of the other officers attached to the station at that time.”
It seems to the court that an aid to an admiral in the Navy, whose pay is provided for in said act of May 13, 1908, is an officer legally ordered to duty with an admiral, vice admiral, or a rear admiral to perform for him strictly personal, confidential, and routine duties. .
These duties can not be combined with the duties of a fleet ordnance officer or any other officer who has other duties to perform separate and distinct from those of an aid. A fleet ordnance officer has certain specified duties to perform entirely separate and distinct from the duties of an aid. This is well pointed out in the testimony of Bear Admiral Osterhaus in this case. This principle is recognized in the Navy Begulations, which provide what officers shall constitute the staff of the commander in chief of a fleet.
“395. (1) The chief of staff, flag secretary, fleet ordnance officer, fleet engineer, flag lieutenant, and aid shall constitute the personal staff of the commander in chief of a fleet.”
In this case the order of the Secretary of the Navy was that the plaintiff should “ report to the commander in chief of the United States Pacific Fleet for dutjr on his personal staff as fleet ordnance officer.” He was not ordered to report for duty as fleet ordnance officer and. aid. Nothing in his orders contemplated his performing the duties of aid and he could not become an aid entitled to pay as such under the *28 statute merely by being called an aid by his commanding officer, or by having the word “ aid ” affixed to his name in the Naval Register.
It seems clear that this officer was not an aid who was legally entitled to the additional pay provided for aids in said act of May 13, 1908.
An officer of the Army with rank above captain could not legally receive the additional pay provided for aids to major and brigadier generals, and before the passage of the act fixing the additional pay of aids in the Navy the same rule was followed in the Navy. Does said act of May 13, 1908, change the qualifications necessary for aids in the Navy? Revised Statutes, section 1098, prescribes the qualifications of an officer of the Army to become legally an aid to a major general, one of which is that he shall not be above the rank of captain. It follows (no statute or regulation having changed the qualifications of aids in the Navy), assimilating the ranks, that no officer above the rank of lieutenant in the Navy can be entitled to pay as aid to a rear admiral. It seems to the court that Congress when it fixed the pay for aids in the Navy must have had in mind the qualifications which at that timé were prescribed for aids in the Army and which up to that time had been the qualifications for aids in the Navy. Surely Congress never contemplated that an attempt would be made to have all officers on the personal staff of admirals, of whatever rank and in the performance of whatever duties, paid as aids. Such i. construction of the statute as that now insisted upon would go far beyond the intent of Congress and would automatically entitle to additional pay a large number of officers never intended by Congress to enjoy the benefit of the statute.
At the time the plaintiff was ordered to duty at Mare Island Navy Yard he was a lieutenant commander and was not eligible to be appointed as aid; nor does the order ordering him to duty at that yard designate him as aid, and no order of the commandant of the yard could have made him eligible.
While it is not pertinent to this case, yet as there are other cases now before this court for decision in which the *29 question is pertinent it will be proper for the court to inquire how aids to admirals can be legally ordered to duty as such. The appointment of aids for the different admirals of the Navy is provided for in the Naval Regulations. Upon examination of those regulations it will be seen that in all cases aids must be nominated to the Secretary of the Navy by the officers under whom they are to serve.
Nomination does not mean appointment, and the regulations evidently intend that the Secretary of the Navy shall pass upon these nominations. The commanding officer of a fleet has no power to appoint an aid for a rear admiral commanding a division; the right to nominate is in the rear admiral to whom the aid is to be appointed, and any orders issued by a commander in chief of a fleet is without authority and confers no rights on the officer so ordered. The appointment is void ah initio.
It may be claimed that the Frucht Case, 49 Ct. Cls., 570, is in conflict with this view. But a careful examination of that case will disclose the fact that Frucht was a lieutenant in the Navy of eligible rank to fill the position of aid, and was ordered by the Secretary of the Navy to report to a rear admiral, commandant of a navy yard, to perform such duty as the commandant might assign him; and this court very properly decided that the order of the Secretary was sufficient authority to the commandant of the yard to assign the officer to duty as his aid.
The mere fact that the officer so appointed performed the duties of the position does not confer upon him the right to draw the pay attached to it. If it were otherwise officers of the Government who had no authority to act might appoint persons to legal offices, and these persons might continue to be paid by the Government until the illegality of their appointments -was discovered. A naval officer is presumed to know, indeed it is his bounden duty to know, the regulations of the Navy; and while he might have to obey an order of his superior officer he would do so knowing full well that he would not be entitled to additional pay for performing the duties of a position to which he was appointed by illegal authority.
*30 It follows, therefore, that the plaintiff can not recover in this case, and a dismissal of his petition is adjudged.
All the judges concur.